**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| EDWARD AND MICHELE WERNECKE | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Civil Action No. C-05-297 |
| | § | |
| CAREY COCKRELL, IN HIS EXECUTIVE CAPACITY AS THE AGENCY HEAD OF THE FAMILY AND PROTECTIVE SERVICES, MINERVA REESE, IN HER OFFICIAL CAPACITY, BEN CAMPBELL, IN HIS OFFICIAL CAPACITY, AND STELLA KLEIN, IN HER OFFICIAL CAPACITY, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

**ORDER DISMISSING ACTION WITHOUT PREJUDICE**

On this day came on to be considered Plaintiffs' Emergency Motion for Temporary Restraining Order ("Motion for Temporary Restraining Order" or "Motion") and Plaintiffs' Original Complaint and Application for Injunctive Relief ("Complaint"). After considering the Motion and Complaint, and conducting a hearing attended by counsel for all parties, the Court determines that it must abstain pursuant to the doctrine announced in <u>Younger v. Harris</u>, 401 U.S. 37 (1971). Therefore, the Motion for Temporary Restraining Order is DENIED and the Complaint will be DISMISSED without prejudice.

I.   **Background**[1]

Plaintiffs Edward Wernecke ("Mr. Wernecke") and Michele Wernecke ("Ms. Wernecke") are the biological parents and legal guardians of Katie Wernecke ("Katie"), Jonathan Wernecke, James Wernecke, and Joshua Wernecke, all of whom are minor children. (Compl. ¶ 3.01.)   On January 7, 2005, Katie was diagnosed with Hodgkin's Lymphoma and subsequently treated with chemotherapy. (Compl. ¶¶ 3.02-3.03.)   After a second round of chemotherapy in February 2005, Katie's treating physician, Dr. Nejemie Alter, requested the Plaintiffs to consent to allow a blood transfusion during any subsequent rounds of chemotherapy.   (Compl. ¶ 3.03.) The Complaint next alleges that:

> Plaintiffs are members of the Church of God and practice a belief that blood transfusions should only come from family members.   Plaintiffs refused to consent and offered Dr. Alter three alternatives.   Plaintiffs told Dr. Alter that they could wait a week to allow Katie's blood count [to] recover from a round of chemotherapy, or save Katie's blood for later transfusion, or use her mom's blood (maternal blood).

(Compl. ¶ 3.03.)

On April 7, 2005, Dr. Alter contacted the Texas Department of Family and Protective Services ("DFPS") and "reported the refusal

---

[1]   As discussed *infra*, this Order relies upon facts alleged in the Complaint and stated by Plaintiffs' counsel in the hearings before this Court.   The Court merely assumes for the sake of argument that the facts alleged by Plaintiffs are true. The Court does not make any findings of fact or conclusions of law concerning Plaintiffs' underlying allegations.

to consent to blood transfusions as 'abuse.'" (Compl. ¶ 3.04.) In response to a threat from Linda Kim Garcia, a DFPS employee, that Katie might be removed from Plaintiffs' home, Plaintiffs consented to a blood transfusion from a non-maternal source during a subsequent round of chemotherapy. (Compl. ¶ 3.04.)

Dr. Alter then recommended that Katie undergo radiation therapy upon the completion of the chemotherapy. (Compl. ¶ 3.05.) Plaintiffs took Katie to another physician, Dr. Judith Mullins, who "suggested additional chemotherapy before considering radiation therapy." (Compl. ¶ 3.05.)[2] Plaintiffs then "sought to have Katie evaluated by a third doctor." (Compl. ¶ 3.05.)

During this time period, Linda Kim Garcia told Plaintiffs that unless they consented to Katie receiving radiation therapy, Plaintiffs' children would be taken from their home. (Compl. ¶ 3.06.) On May 27, 2005, Ms. Garcia told Plaintiffs that they had until May 31, 2005 to consent to radiation therapy, or the DFPS would take custody of Katie. (Compl. ¶ 3.06.)

On June 1, 2005, Ms. Garcia, accompanied by another DFPS employee and Nueces County constables, arrived at Plaintiffs' home

---

[2] Although it is beyond the scope of this Order, the Court notes that the sole piece of evidence Plaintiffs' submitted is the Affidavit of Mr. Wernecke, which was attached to the Complaint. Contrary to what is alleged in the Complaint, Mr. Wernecke's Affidavit states: "Dr. Mullins['] opinion was that Katie needed both chemotherapy and radiation therapy." (Wernecke Aff. at 4.)

with an "Order for Protection of a Child in an Emergency and Notice of Hearing." (Compl. ¶ 3.07.)  Although Mr. Wernecke informed the officials that Katie and her mother were not home, the officials searched Plaintiffs' residence and took custody of Jonathan and Joshua Wernecke. (Compl. ¶ 3.07.)

On June 4, 2005, the DFPS took custody of Katie and James Wernecke. (Compl. ¶ 3.08.)  On the same date, Ms. Wernecke was arrested for interfering with the DFPS's initial attempt to take custody of Katie. (Compl. ¶ 3.08.)  Ms. Wernecke posted a cash bond and was released, and the case against Ms. Wernecke has since been dismissed. (Compl. ¶ 3.08.)

Jonathan, Joshua and James Wernecke all were returned to their parents' custody on June 10, 2005. (Compl. ¶¶ 3.07-3.08.)  Katie remains in DFPS custody. (Compl. ¶ 3.09.)

On June 14, 2005, Plaintiffs initiated the above-styled action, filing their Complaint and Motion for Temporary Restraining Order with this Court.  The Complaint purports to bring a cause of action under 42 U.S.C. § 1983, for alleged violations of Plaintiffs' rights as secured by the First, Fourth and Fourteenth Amendments to the United States Constitution. (Compl. ¶ 4.01.)  Plaintiffs seek only prospective injunctive relief.[3] (Compl. ¶¶

---

[3]  Ordinarily, a citizen may not sue a state entity or official unless the state first waives its sovereign immunity. See, e.g., Ysleta Del Sur Pueblo v. Laney, 199 F.3d 281, 286 (5th Cir. 2000) (citing Seminole Tribe v. Florida, 517 U.S. 44, 47

-4-

4.02, 5.01.)   Plaintiffs claim that they seek injunctive relief that "would merely require the defendants to follow the procedures and processes set up by the Texas Legislature in the Texas Family Code."  (Compl. ¶ 4.04.)   The desired relief also includes "the immediate return of Katie, and an injunction prohibiting Defendants from retaliating against Plaintiffs and prohibiting the removal of Katie or her siblings from their home."  (Compl. ¶ 4.03.)

Commencing at 1:20 p.m. on June 14, 2005 (the day the Complaint was filed), the Court conducted a hearing, on the record, with Plaintiffs' counsel (hereinafter, "1:20 p.m. hearing").  The Court questioned Plaintiffs' counsel about why Plaintiffs failed to include in their Motion for Temporary Restraining Order a certification of the efforts which had been made to give notice to Defendants, as required by the Federal Rules of Civil Procedure.[4]

---

(1996)).  An exception to this rule applies to claims seeking prospective injunctive relief.  See Ex Parte Young, 209 U.S. 123 (1908); AT&T Communications v. BellSouth Telecommunications Inc., 238 F.3d 636, 647 (5th Cir. 2001) ("Under the Ex parte Young doctrine, a private party may sue individual state officers in federal court to obtain prospective relief from an ongoing violation of federal law.") (citations omitted).

[4]  Federal Rule of Civil Procedure 65(b) provides that a district court may grant a temporary restraining order "without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required."  Fed. R. Civ. P. 65(b) (emphasis added).

The Court informed Plaintiffs' counsel that it would conduct a hearing on the matter at 4:00 p.m. the same day (June 14, 2005), but that Plaintiffs were required to immediately notify Defendants and Katie's guardian ad litem of Plaintiffs' application for injunctive relief and of the 4:00 p.m. hearing.

Also at this 1:20 p.m. hearing, Plaintiffs' counsel explained that Plaintiffs had no objection to Katie undergoing chemotherapy, and they even stated that they were "not opposed to radiation [therapy] if someone explains ... it to them, and explains the risk." Additionally, counsel stated that "the only way religion comes into this ... is that the state has focused on that, and [Plaintiffs] may be getting discriminated upon because of a perception of what their religion is."[5]

At the 4:00 hearing on June 14, 2005, counsel for Plaintiffs and for Defendants appeared. Although Katie's guardian ad litem had been notified of the hearing, she did not attend. After hearing argument, and based upon the allegations in the Complaint and the statements made by Plaintiffs' counsel, the Court decides as follows.

## II.  Discussion

---

[5]  In Mr. Wernecke's Affidavit, when referring to his "religious objection to ordinary blood transfusions" (as opposed to transfusions using blood from family members), he states: "This is a religious practice but under no circumstances would we allow Katie to risk death by withholding blood from other sources."  (Wernecke Aff. at 2.)

-6-

Analysis of Plaintiffs' Complaint and Motion for Temporary Restraining Order begins and ends with the doctrine announced in Younger v. Harris, 401 U.S. 37 (1971).  "The Younger doctrine, which counsels federal-court abstention when there is a pending state proceeding, reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." Moore v. Sims, 442 U.S. 415, 423 (1979) (citing Samuels v. Mackell, 401 U.S. 66 (1971)).  Although the Younger case itself dealt with pending state criminal proceedings, "as [the Supreme Court] recognized in Huffman v. Pursue, Ltd., 420 U.S. 592 (1975), the basic concern--that threat to our federal system posed by displacement of state courts by those of the National Government-- is also fully applicable to civil proceedings in which important state interests are involved."[6]  Moore, 442 U.S. at 423.

---

[6] As stated by the Younger Court, one of the vital considerations underlying the doctrine is:

> the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways....  What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

Younger, 401 U.S. at 44.

"Abstention under <u>Younger</u> ... is generally deemed appropriate when assumption of jurisdiction by a federal court would interfere with pending state proceedings, whether of a criminal, civil, or even administrative character." <u>Louisiana Debating and Literary Ass'n v. City of New Orleans</u>, 42 F.3d 1483, 1489 (5th Cir. 1995) (quotation omitted).   In order to determine whether <u>Younger</u> abstention is appropriate, a court "must answer three relevant questions: (1) whether the state proceedings constitute an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges." <u>Id.</u> at 1490 (citing, <u>inter alia</u>, <u>County Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432 (1982)); <u>see also Texas Ass'n Bus. v. Earle</u>, 388 F.3d 515, 519 (5th Cir. 2004) (same).

Here, Plaintiffs concede that the first element--whether the state proceedings constitute an "ongoing state judicial proceeding"--is satisfied.   Based upon the representations of counsel for both Plaintiffs and Defendants, there have been two previous hearings concerning this matter in Nueces County Court at Law No. 5, and the trial judge in that court has previously denied a motion for temporary restraining order filed by the Werneckes. Indeed, there is apparently an evidentiary hearing scheduled in the matter for June 15, 2005 in that court.   This clearly is the type of "judicial proceedings" contemplated by the <u>Younger</u> doctrine.

See _Moore_, 442 U.S. at 423-27 (holding that _Younger_ abstention applies to ongoing Texas state judicial proceedings involving the temporary removal of a child from the parents' home).  Further, there is no dispute that if the Court were to grant Plaintiffs the relief they seek--an order requiring the state to return Katie to Plaintiffs and an injunction prohibiting the state from removing Katie in the future--this would directly interfere with these ongoing state judicial proceedings.

Plaintiffs also concede that the second _Younger_ element-- whether the proceedings implicate important state interests--is satisfied.  Put simply, a "State has an urgent interest in the welfare of [a] child." _Lassiter v. Dep't Soc. Servs._, 452 U.S. 18, 27 (1981).

As to the third _Younger_ element--whether there is an adequate opportunity in the state proceedings to raise constitutional challenges--Plaintiffs concede that they failed to even attempt to raise their constitutional challenge before the state court.  They also do not claim that they have been barred from raising constitutional claims in the state court proceedings.  Under _Younger_, "abstention is appropriate unless state law clearly bars the interposition of the constitutional claims." _Moore_, 442 U.S. at 426.  As the _Moore_ Court stated in reference to a prior version of the same Texas statutory scheme at issue here, "the only pertinent inquiry is whether the state proceedings afford an

adequate opportunity to raise the constitutional claims, and Texas law appears to raise no procedural barriers." Id. at 430.   In Moore, the Court upheld the application of Younger abstention even when the parents were not afforded a hearing in state court until 42 days after they lost custody of their children, see id. at 442-- far shorter than the time at issue here.

Therefore, based upon the Plaintiffs' concessions, the Court finds that each of the Younger elements apply.  The only remaining inquiry is whether any of the "narrowly delimited exceptions to the [Younger] abstention doctrine" apply.  Texas Ass'n Bus. v. Earle, 388 F.3d 515, 519 (5th Cir. 2004).

> Specifically, courts may disregard the Younger doctrine when: (1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it,' or (3) application of the doctrine was waived.

Id. at 519 (quoting Younger, 401 U.S. at 49; citing, inter alia, Trainor v. Hernandez, 431 U.S. 434, 446 (1977)).  After the Court detailed these exceptions to Plaintiffs' counsel during the 4:00 p.m. hearing, Plaintiffs "d[id] not argue that any of the narrow exceptions to Younger apply," and therefore the Court need not consider them.[7]  Id.

---

[7]  It is worth remarking that Plaintiffs' counsel made a reference at the 1:20 p.m. hearing to their belief that "[Plaintiffs] may be getting discriminated upon because of a

-10-

One final issue should be addressed at this point. During the 4:00 p.m. hearing, Plaintiffs argued that the state trial-court judge made a comment during a status conference which led Plaintiffs to believe that the judge had already made a final decision prior to Plaintiffs having the opportunity to present witnesses and other evidence.[8] Even if this alleged comment did prove that the state judge had made his final decision—something which this Court expressly does not find—Plaintiffs' recourse would not be filing a civil rights action in federal court. This is because federal district courts do not have the authority to review final state court judgments. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). Under the "Rooker-Feldman

_____

perception of what their religion is." The Complaint specifies that this allegation of "discrimination" based upon the "perception" of their religion is directed toward Dr. Alter, who reported Plaintiffs' initial refusal to consent to blood transfusions as "abuse". (Compl. ¶ 3.04.) (Religion is not mentioned again in the Complaint or in the other materials filed by Plaintiffs.) However, Dr. Alter is not alleged to be a state actor—the DFPS and its officials are the state actors, and there is no allegation in the papers that their motive for taking custody of Katie is a desire to harass Plaintiffs because of their religion. Moreover, even if Plaintiffs could produce evidence of a harassing or bad faith motive on the part of Defendants, the exception to Younger abstention is still inapplicable, so long as Plaintiffs are able to raise Defendants' improper motive in the state-court appeals process. See Tindall v. Wayne County Friend of Court, 269 F.3d 533, 539-40 (6th Cir. 2001).

[8] Apparently the June 15, 2005 state court hearing is scheduled to be an evidentiary hearing, during which Plaintiffs will have their first opportunity to present witnesses.

-11-

doctrine," federal district courts (as courts of original jurisdiction) lack jurisdiction to review, modify, or nullify final orders of state courts. See Union Planters Bank Nat'l Ass'n v. Salih, 369 F.3d 457, 462 (5th Cir. 2004); Weekly v. Morrow, 204 F.3d 613, 615 (5th Cir. 2000). "Nor is th[is] principle ... limited to actions ... which candidly seek review of the state court decree; it extends to others in which the constitutional claims presented in federal court are inextricably intertwined with the state court's grant or denial of relief." Hale v. Harney, 786 F.2d 688, 691 (5th Cir. 1986). In other words, framing the complaint in the form of a civil rights action "cannot circumvent this rule." Liedtke v. State Bar of Texas, 18 F.3d 315, 317 (5th Cir. 1994); Jordaan v. Hall, 275 F. Supp. 2d 778, 789 (N.D. Tex. 2003) ("[T]he complaint is nothing more than a thinly veiled attempt to circumvent the state appellate process and to collaterally attack--in the guise of a federal civil rights action--the validity of a state court ... decree and other related orders."). This is true even if the challenge alleges that the state court's action was unconstitutional. See Liedtke, 18 F.3d at 317 (constitutional questions arising in state proceedings are to be resolved by the state courts); see also Musslewhite v. State Bar of Texas, 32 F.3d 942, 946 (5th Cir. 1994). As the Fifth Circuit has explained:

> If a state trial court errs the judgment is not void, it
> is to be reviewed and corrected by the appropriate state
> appellate court. Thereafter, recourse at the federal

level is limited solely to an application for a writ of certiorari to the United States Supreme Court.

Liedtke, 18 F.3d at 317; see also U.S. v. Shepard, 23 F.3d 923, 924 (5th Cir. 1994) ("A federal complainant cannot circumvent this jurisdictional limitation [i.e., the Rooker-Feldman doctrine] by asserting claims not raised in the state court proceedings or claims framed as original claims for relief.").

It may appear from the foregoing analysis that the Court is side-stepping the important and heart-rending issues raised by the facts alleged in this case.  But the principle underlying the Younger doctrine (as well as the Rooker-Feldman doctrine) is vitally important to the functioning of our coordinate state and federal judicial systems.  In most instances, federal courts must refrain from interfering with ongoing judicial proceedings in state court.  Absent very narrow exceptions which have not been shown here, a plaintiff's recourse is with the state trial court, and then, if appropriate, with the state appellate courts.

Because of these pending state court proceedings, the Court emphasizes the limited nature of this ruling.  The Court has assumed for the sake of argument that Plaintiffs' allegations and the statements of Plaintiffs' counsel are true.  Accepting these as true, the Court finds that it must nonetheless abstain pursuant to Younger.  Neither the contents of this Order, nor any comments made by the Court during the hearings in this matter, should be

-13-

construed as a finding of fact or conclusion of law concerning the underlying allegations.

**III. Conclusion**

In accordance with the abstention doctrine established in Younger and its progeny, the Court hereby DENIES The Motion for Temporary Restraining Order and DISMISSES the Complaint without prejudice.

SIGNED and ENTERED this the 15th day of June, 2005.

Janis Graham Jack
Janis Graham Jack
United States District Judge

-14-